UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

MARY COLE, individually and }
as administratrix of the }
Estate of James H. Cole, }
deceased, }
} CIVIL ACTION NO.
}
Plaintiffs, } CV-97-AR-1069-M
}
vs. }
}
WASHINGTON NATIONAL INSURANCE }
COMPANY, }

Defendant.

cro

ENTERED

AUG 1 2 1998

**MEMORANDUM OPINION**

The above-entitled action is before the court on a motion for summary judgment filed by defendant, Washington National Insurance Company ("Washington National"). Plaintiff, Mary Cole ("Cole"), both individually and in her capacity as administratrix of the Estate of James H. Cole ("Mr. Cole"), deceased, alleges that, by failing pay claims for medical care associated with the colon cancer that contributed to his death, Washington National breached a contract for health insurance it entered into with Mr. Cole. Cole also alleges that Washington National's refusal to pay such claims was in bad faith. In addition, Cole alleges that Washington National fraudulently misrepresented and suppressed material information pertaining to the aforementioned health insurance. Lastly, Cole alleges that Washington National negligently hired, trained, and supervised Sam McNeely. For the reasoned set out more fully below, the court now concludes that

47

Washington National is entitled to partial summary judgment.

## I. *Pertinent Undisputed Facts*

In 1993, Mr. Cole was hired as the administrator of Azalea Nursing Center. *J. Cole Depo.* at 23-24. As a benefit of his position, Mr. Cole's employer promised to provide him with health insurance. *Id.* at 33-34, 40-41. In keeping with that promise, Mr. Cole's employer made some contacts concerning insurance, and Mr. Cole subsequently received an application for insurance from Washington National. *Id.* at 40, 42. Mr. Cole completed the application, and, in so doing, he listed Crohn's Disease, which is a bowel disorder, as a pre-existing condition. *Def.'s Exh. 1 to J. Cole Depo.*

On or about July 21, 1993, Mr. Cole received a letter from Washington National. *Def.'s Exh. 3 to J. Cole Depo.; J. Cole Depo.* at 73. That letter indicated that Washington National was modifying the insurance coverage originally offered to Mr. Cole to place certain riders on his coverage. *Def.'s Exh. 3 to J. Cole Depo.* That letter also instructed Mr. Cole to sign certain enclosed forms and to return them to Washington National. *Id.* According to Washington National, one of the enclosed forms was an "exception endorsement" which, in pertinent part, provided:

> NO BENEFITS WILL BE PAID UNDER THIS CERTIFICATE OF
> INSURANCE, OR UNDER ANY RIDER OR AMENDMENT THERETO, FOR
> DISABILITY, LOSS OR EXPENSE RESULTING FROM OR CAUSED BY ANY

2

DISEASE OR DISORDER OF THE COLON OR RECTUM, INCLUDING
MALIGNANCY AND ANY TREATMENT OR OPERATION FOR OR
COMPLICATIONS THEREOF SUFFERED BY JAMES H. COLE.

\*\*\*

THIS ENDORSEMENT IS NULL AND VOID UNLESS SIGNED BY THE
INSURED.

*Def.'s Exh. 4 to J. Cole Depo.* at 3A. Mr. Cole does not recall ever seeing or signing the exception endorsement. *J. Cole Depo.* at 158. In contrast, Washington National claims that it received a facsimile copy of the exception endorsement bearing Mr. Cole's signature on or about August 3, 1993. *Wolfram Aff.* at ¶¶ 6-8. Upon receipt of the facsimile copy of the exception endorsement from Sam McNeely, the broker who actually sold the policy, Washington National put Mr. Cole's insurance policy "in force" retroactive to July 20, 1993. *Id.* at ¶ 9. The policy covered Mr. Cole, his wife, Mary Cole, and his son, James C. Cole.

On or about May 4, 1994, Washington National deleted both May Cole and James C. Cole from coverage under the policy at the request of Mr. Cole. *Id.* at ¶ 11. Apparently, Mr. Cole made this request because Azalea Nursing Center was no longer paying part of the policy premium due to its closure, and because he could not afford to continue paying the entire policy premium himself. *J. Cole Depo.* at 82.

On or about June 3, 1996, Washington National received a

letter from Mr. Cole indicating that he was eligible for Medicare. *Exh. E to Wolfram Aff.* That letter also instructed Washington National to discontinue Mr. Cole's policy. *Id.* Washington National immediately canceled Mr. Cole's policy pursuant to his request. *Wolfram Aff.* at ¶ 14.

Prior to the cancellation of Mr. Cole's policy in June 1996, nine hundred and fifty-five (995) claims were made under the policy on behalf of Mr. Cole. *Id.* at ¶ 18. These claims amounted to $359,367.92. *Id.* Washington National paid claims under the policy totaling $110,772.75. *Id.* at ¶ 20. Most of the claims that Washington National refused to pay were denied pursuant to the purported exception endorsement. *Id.* at ¶ 23.

## II. *Summary Judgment Standard*

Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c), Fed.R.Civ.P. In addition, the Eleventh Circuit has observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Turnes v. AmSouth*

*Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994). Washington National has invoked Rule 56.

### III. *Discussion*

As an initial matter, the court will address whether Cole has standing to bring this action in her individual capacity. Washington National argues, *inter alia*, that, because Cole admits that she never made a claim on her own behalf under the insurance policy at issue, she has no standing to sue in her individual capacity. This argument is well taken.

It is axiomatic that, in order to have standing to sue, one must demonstrate an injury. *LaCoste v. SCI Ala. Funeral Servs., Inc.*, 689 So.2d 76, 81 (Ala. Civ. App. 1996). Cole, acting in her individual capacity, has made no such showing. Indeed, there has been no showing that Cole was personally responsible for the policy premiums or that she is personally liable for any of her husband's unpaid medical expenses which are at issue in this litigation. Furthermore, despite Cole's assertion to the contrary, she did not enter into a contract for insurance with Washington National in 1993. The record clearly demonstrates that only Mr. Cole entered into that contract. *Exh. 6 to M. Cole Aff.* at 3. Cole was merely a third-party beneficiary of that contract. In view of the foregoing, the court concludes that Cole does not have standing to proceed on any of her claims in

5

her individual capacity. For the balance of this opinion, any reference to "Cole" will be to her in the capacity of administratrix of her husband's estate.

As noted above, Cole brings several claims against Washington National. Initially, Cole alleges that Washington National's refusal to pay certain insurance claims amounts to a breach of contract under a policy it had with Mr. Cole. *Compl.* at ¶¶ 16-19. Second, Cole alleges that, in refusing to pay said claims, Washington National is guilty of bad faith. *Compl.* at ¶¶ 23-26. Third, Cole alleges that Washington National fraudulently misrepresented and suppressed material information relating to the insurance policy at issue. *Compl.* at ¶¶ 20-22. Finally, Cole alleges that Washington National negligently hired, trained and supervised Sam McNeely. *Compl.* at ¶¶ 27-30. The court will address these claims in reverse order.

### A. Cole's Claims for Negligence and Fraud

Paragraphs 20-22 and 27-30 of Cole's Complaint alleges claims for fraudulent misrepresentation, fraudulent suppression, and negligent hiring, training, and supervision. With its brief in support of its motion for summary judgment, Washington National directly attacks each of these claims. In her brief opposing Washington National's motion for summary judgment, however, Cole makes no attempt to counter these attacks, or if she does this court cannot locate that attempt. Washington

National now argues that Cole's failure to do so warrants the dismissal of her negligence and fraud claims. This argument is well taken. As the Eleventh Circuit has explained, "the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.), *cert. denied*, 516 U.S. 817, 116 S.Ct. 74 (1995). Accordingly, Cole's claims for fraudulent misrepresentation, fraudulent suppression, and negligent hiring, training, and supervision are due to be dismissed.

Furthermore, in her brief opposing Washington National's motion for summary judgment, Cole asserts that "[a]ny signature of James Cole's on a Rider Was Obtained Through Fraud." *Pl.'s Br.* at 21. As defendant correctly observes, Cole's complaint contains no allegations in support of this charge. Indeed, even under "the liberal system of 'notice pleading' set up by the Federal Rules," *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163 (1993), it cannot be said that anything in the complaint gives Washington National the requisite "fair notice" that it will have to defend a claim for either fraudulent inducement or forgery. Rule 9(b), Fed.R.Civ.P., eliminates "notice pleading" as a means of alleging fraud. It is wholly inappropriate for the court to consider Cole's newly-introduced

fraud claim, and, thus, the court will not entertain any such claim.

### B. Cole's Claim for Bad Faith

Washington National argues that Cole's claim for bad faith refusal to pay a valid insurance claim fails as untimely. More specifically, Washington National contends that Cole had knowledge that it was denying coverage on the basis of the alleged exception endorsement more than two years prior to the filing of this action. This contention is well taken.

As Washington National correctly observes, under the law of Alabama, "[t]he statute of limitations period for bad faith claims arising on or after January 9, 1985, is two years." *McLeod v. Life of the South Ins. Co.*, 703 So.2d 362, 364 (Ala. Civ. App. 1996) (citing *ALFA Mut. Ins. Co v. Smith*, 540 So.2d 691, 692-93 (Ala. 1988)). Like other tort claims, the statute of limitations for the tort of bad faith does not begin to run until the cause of action "accrues." According to the Supreme Court of Alabama, "[t]he cause of action for bad faith refusal to honor insurance benefits accrues upon the event of the bad faith refusal, or upon the knowledge of facts which would reasonably lead the insured to a discovery of the bad faith refusal." *Safeco Ins. Co. of Am. v. Sims*, 435 So.2d 1219, 1222 (Ala. 1983) (citing *Dumas v. So. Guar. Ins. Co.*, 408 So.2d 86 (Ala. 1981)).

In the instant case, the record clearly indicates that, as

of May 1994, Cole was aware of denials of coverage by Washington National on the basis of the alleged exception endorsement. *M. Cole Depo.* at 81-82. Consequently, her cause of action for bad faith accrued as of that time. Given that Cole did not file this lawsuit until December 1996, the court concludes that her claim for bad faith is due to be dismissed as untimely.

Furthermore, even if the court were to assume, *arguendo*, that Cole's bad faith claim was timely, it would avail her nothing. A plaintiff making a claim of bad faith has the burden of proving, *inter alia*, "the absence of any reasonably legitimate or arguable reason" for the denial of coverage. *Nat'l Sav. Life Ins. Co. v. Dutton*, 419 So.2d 1357, 1361 (Ala. 1982) (quoting *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So.2d 179, 183 (Ala. 1982)) (emphasis supplied); *see also Johnson v. Centennial Life Ins. Co.*, 705 So.2d 490, 494 (Ala. Civ. App. 1997). The Supreme Court of Alabama has defined an "arguable reason" to mean "one that is open to dispute or question." *Bowen*, 417 So.2d at 183.

With the foregoing standard in mind, it is clear that Cole's bad faith claim also fails on the merits. Washington National has articulated arguable reasons for its refusal to pay each of the claims at issue in this action. For example, Washington National asserts that denied claims totaling $231,138.06 because such claims involved expenses that were excepted pursuant to the alleged exception endorsement. *Wolfram Aff.* at ¶ 23. Likewise,

Washington National says that it refused to pay claims totaling $4,536 because such claims were in excess of the reasonable and customary charge for the services rendered and, therefore, were not covered under the terms of Mr. Cole's policy. *Id.* at ¶ 27-29. Washington National offers similar explanations for all of the remaining unpaid claims. *Id.* at ¶¶ 21-22, 24-26, 30-32. By virtue of the fact that Washington National has offered a legitimate and arguable basis for each of Mr. Cole's claims that it refused to pay, this court is bound to conclude that, under Alabama law, Cole cannot prevail on her bad faith claim. *Johnson*, 705 So.2d at 494. The mere fact that Cole disputes the validity of the alleged exception endorsement, for example, does nothing to undermine this conclusion. Indeed, it is just such a dispute that mandates the dismissal of Cole's bad faith claim. *Dutton*, 419 So.2d at 1362 ("Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the [bad faith] claim must fail and should not be submitted to the jury.").

### C. Cole's Claims for Breach of Contract

Finally, Cole alleges that Washington National breached its insurance contract with Mr. Cole by denying payment on claims totaling $248,595.17. According to Washington National, approximately 93% ($231,138.06) of these claims were properly

10

denied pursuant to the alleged exception endorsement to Mr. Cole's policy. *Wolfram Aff.* at ¶ 23. Consequently, the vast majority of Cole's breach of contract claims turn on whether Mr. Cole actually executed the alleged exception endorsement.

As support for its position, Washington National makes much of a short exchange which occurred at Mr. Cole's deposition. When asked by Washington National's counsel if his signature appeared at the bottom of a **facsimile copy** of the alleged exception endorsement, Mr. Cole unequivocally answered, "Yes." *J. Cole Depo.* at 77. However, despite the insurer's assertions to the contrary, this testimony is not conclusive.[1] Indeed, at his deposition, Mr. Cole subsequently testified with an equal lack of equivocation that he did not recall signing the alleged exception endorsement and that he did not recall ever seeing the document previously. *Id.* at 158-59. In the court's opinion, this later testimony, coupled with other inconsistencies relating

---

[1] Washington National contends that the fact that Mr. Cole admitted that his signature appears on a facsimile copy of the exception endorsement conclusively demonstrates that he signed it. As support for this contention, Washington National relies on *Mann v. Bank of Tallassee*, 694 So.2d 1375, 1381 (Ala. Civ. App. 1996), in which the Alabama Court of Civil Appeals observes, "[the plaintiff's] failure to remember actually signing the UCC filing, in light of the fact that he admits that his signature appears on the document, does not present substantial evidence that the facts concerning collateral for the loan were misrepresented." Defendant's contention is not well taken. *Mann* is immediately distinguishable from the instant case. More specifically, nothing in *Mann* suggests that the plaintiff ever challenged the authenticity of his signature on the UCC filing at issue in that case. Obviously, such is not the case here. Therefore, Washington National's reliance on *Mann* is inapposite.

to the execution of the insurance policy documents,[2] is sufficient to create a material fact question concerning the validity of the alleged exception endorsement. After all, in the age of computer imagining technology, the mere fact that one agrees that his signature appears on a facsimile copy of a document does not necessarily mean that he did, in fact, sign the original document in question. This is especially true where, as here, an original copy of the subject document has yet to be produced. Where is it? Accordingly, insofar as Cole's breach of contract claims relate to insurance coverage denied pursuant to the exception endorsement, Washington National's motion for summary judgment is due to be denied.[3]

## IV. *Conclusion*

In spite of the foregoing, the court wishes to emphasize that Cole has yet to prove her case. This opinion merely

---

[2] For example, several of the insurance policy documents indicated that Mr. Cole's signature was witnessed by Sam McNeely ("McNeely"), the broker who sold Mr. Cole the policy. *See Def.'s Exh. 6 and 7 to J. Cole Depo.* However, it is undisputed that Mr. Cole never met McNeely and that McNeely did not actually witness Mr. Cole sign these documents. *J. Cole Depo.* at 156-57. Indeed, defendant relies on this last fact in defending against Cole's fraud claims. *Def.'s Mem. In Support of Mot. for Summ. J.* at 18-19. Curiously, neither party elected to submit any testimony by McNeely whatsoever.

[3] With respect Cole's breach of contract claims relating to all other insurance coverage denied by Washington National, the court concludes that Cole has failed to create a genuine issue of material fact concerning breach. Likewise, the court finds Cole's waiver argument unpersuasive for the reasons articulated in Washington National's reply brief. *Def.'s Reply Mem.* at 5-6. Therefore, Washington National is due to receive summary judgment on all breach of contract claims relating to coverage that was denied by Washington National for some reason other than the exception endorsement.

reflects the court's view that, with respect to some of Cole's claims, there is a material fact issue which makes summary judgment inappropriate. Obviously, the fact that a plaintinff's claim survives Rule 56 scrutiny in no way guarantees that it will survive Rule 50 scrutiny.

The court will enter a separate and appropriate order in keeping with the conclusions reached hereinabove.

DONE this 12th day of August, 1998.

                                                      WILLIAM M. ACKER, JR.
                                                      UNITED STATES DISTRICT JUDGE